JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Sharestates Investments, LLC

**(b)** County of Residence of First Listed Plaintiff    Great Neck
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Douglas J. Ferguson, Esquire, Eisenberg, Gold & Agrawal, P.C.
1040 N Kings Highway, Suite 200, Cherry Hill, NJ 08034
856-330-6200

## DEFENDANTS

Westrock Appraisal Services, Inc.

County of Residence of First Listed Defendant    Palm Beach
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [x] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [x] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability   Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel &   [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander   Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'   Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability   [ ] 368 Asbestos Personal [ ] 340 Marine   Injury Product [ ] 345 Marine Product   Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | Liability   **PERSONAL PROPERTY** [ ] 350 Motor Vehicle   [ ] 370 Other Fraud | | [ ] 840 Trademark [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle   [ ] 371 Truth in Lending | **LABOR** | | [ ] 485 Telephone Consumer Protection Act |
| [x] 190 Other Contract | Product Liability   [ ] 380 Other Personal | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [x] 360 Other Personal   Property Damage | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | Injury   [ ] 385 Property Damage [ ] 362 Personal Injury -   Product Liability | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | Medical Malpractice | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights   **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting   [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment   [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/   Sentence Accommodations   [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities -   [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | Employment   **Other:** [ ] 446 Amer. w/Disabilities -   [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application [ ] 465 Other Immigration | | |
| | Other   [ ] 550 Civil Rights [ ] 448 Education   [ ] 555 Prison Condition | Actions | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S. Code § 1332

Brief description of cause: Breach of Appraisal Contract and Appraiser Malpractice

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE      DOCKET NUMBER

DATE   3/3/25      SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

JS 44 Reverse (Rev. 04/21)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Eisenberg, Gold & Agrawal, P.C.**
Janet L. Gold, Esq.
Douglas J. Ferguson, Esq.
1040 North Kings Highway, Suite 200
Cherry Hill, NJ 08034
jgold@egalawfirm.com
dferguson@egalawfirm.com
(856) 330-6200
Attorneys for Plaintiff, Sharestates Investments, LLC

-and-

**Piel Law Firm, LLC**
William M. Rudow, Esquire
502 Washington Avenue, Suite 730
Baltimore, Maryland 21204-4525
wrudow@piellawfirm.com
(410) 542-6000
Pro Hac Vice Admission Pending
Attorneys for Plaintiff, Sharestates Investments, LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHARESTATES INVESTMENTS, LLC** | |
| Plaintiff | **COMPLAINT** |
| v. | Civil Action No. |
| **WESTROCK APPRAISAL SERVICES, INC. and STEVEN R. ROMER, MAI** | |
| Defendants. | |

Plaintiff, Sharestates Investments, LLC ("Plaintiff" or "Lender"), by its undersigned attorneys at the Piel Law Firm, LLC and Eisenberg, Gold & Agrawal, P.C., as and for its Complaint, respectfully allege as follows:

## THE PARTIES

1.    Plaintiff Sharestates Investments, LLC is an entity organized and existing pursuant to the laws of Delaware and maintains its principal place of business at 8 Bond Street, Suite 100, Great Neck NY 11021.

2.    Defendant WestRock Appraisal Services, Inc. ("WestRock") is a corporation, organized and existing pursuant to the laws of the State of Florida, and maintains its principal places of business at 500 S. Australian Avenue, Ste 600-1096, West Palm Beach, FL 33401.

3.    Defendant Steven R. Romer, MAI ("Romer") is an individual domiciled at 11227 Bannock Ave. Boynton Beach, FL 33437; WestRock and Romer are together called, the "Appraisers."

## NATURE OF PROCEEDINGS

4.    Plaintiff commences this action based upon the Defendants' breach of contract in appraising certain real property, as a result of which damages were sustained.

## JURISDICTION

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.     Sharestates Investments, LLC is wholly owned by Sharestates, Inc. Sharestates, Inc. is incorporated in the State of Delaware and has a principal place of business as 8 Bond Street, Ste 100, Great Neck NY, 11021;  8 Bond Street, Ste 100, Great Neck NY, 11021 is Sharestates Inc.'s nerve center. Accordingly, the Plaintiff is a citizen of New York and Delaware for its allegation of diversity of jurisdiction under 28 U.S.C. § 1332.

7.     All Defendants are citizens of Florida for its allegation of diversity of jurisdiction under 28 U.S.C. § 1332.  Since the Plaintiff is citizens of New York and Delaware, and all Defendants are citizens of Florida, there is complete cross-party diversity of jurisdiction per 28 U.S.C. § 1332.

## VENUE

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

9.     A substantial part of the events or omissions giving rise to the claim occurred when Defendants performed an appraisal ("Appraisal") of real property and

improvements located at 1213-1221 Broad Street, Newark, New Jersey 07114 ("Property") using significant information found in New Jersey including, without limitation, New Jersey databases.

10.     Substantial specific events or omissions giving rise to the claim occurred as the Appraisal required personal Property inspection and Defendants personally viewed the Property in New Jersey, as identified in Section 10. of the Appraisal CERTIFICATIONS AND GENERAL ASSUMPTIONS [Bates-Stamped SS 1215 - 12215 Broad 76]:

> *10. Steven R. Romer has made a personal (interior/exterior) inspection of the property that is the subject of this appraisal report, 1213-1221 Broad Street & 124 Miller Street, Newark, New Jersey.*

11.     Additional substantial specific events or omissions giving rise to the claim occurred as the Plaintiff made a Loan, as defined below, secured by the Property.

12.     Additional substantial specific events or omissions giving rise to the claim occurred as the Plaintiff made a Loan to a New Jersey Borrower, as defined below.

13.     Additional substantial specific events or omissions giving rise to the claim occurred as the Appraisal was a material part of a single unified New Jersey real estate secured Loan transaction.

14.     Potential witnesses include persons located in New Jersey relating to the Property and Loan.

## LIMITATIONS

15.    The New Jersey statute of limitations for breach of contract claims is prescribed by **N.J.S.A. 2A:14-1**. This law sets the limit at six (6) years for actions to be brought for breach of any contract, note, or other written obligation.

16.    The New Jersey statute of limitations for appraisal malpractice claims is also prescribed by **N.J.S.A. 2A:14-1** and see *Vision Mortg. Corp. v. Patricia J. Chiapperini, Inc.* 156 N.J. 580, *580; 722 A.2d 527, **527; 1999 N.J. LEXIS 7 applying the six (6) year limitations to appraiser malpractice cases.[1]

17.    The Review Appraisal, as defined below, was delivered to the Plaintiff on or about May 30, 2023, within the six (6) year limitations.

## GENERAL FACTS

18.    This claim arises out of $3,987,000.00 loan ("Loan") funded by Lender to Broad Prospect, LLC ("Borrower"), a New Jersey entity, with an address of 900 C Lake Street, Suite 11, Ramsey, NJ 07446, on May 13, 2019, for the refinance of the Property.

19.    Sharestates is an asset-based mortgage ("ABM") lender.

---

[1] *Vision Mortg. Corp. v. Patricia J. Chiapperini, Inc.* supra at 586 held: *Because Vision commenced this action on June 13, 1995, less than four years after it became aware of the 1991 appraisal* [review appraisal identifying the large value differential], *plaintiff brought the action well within the six-year statute of limitations for professional malpractice.*

20.    Sharestates, inter alia, also underwrites and services ABM loans including the Loan.

21.    WestRock is a nationwide real estate appraisal company, which, according to its website:

> *WestRock's growth is a testimonial to the quality of its appraisals; at WestRock, **the "quality" of our reports forms the basis of our company motto: "Specializing in Market Values You Can Rely On"**.* [Emphasis Added]
>
> ...
>
> *WestRock's operations is dedicated to on-time delivery of a **superior real estate appraisal report**, while our clients are entitled to our professionalism, integrity and an enhanced customer service experience.* [Emphasis Added]
>
> ...
>
> *At WestRock, we're committed to delivering excellence in valuations for both residential and commercial properties, **setting the benchmark for quality and precision**.* [Emphasis Added]

22.    Romer is an NJ Certified General R.E. Appraiser I.D. No. 42RG00197400 and holds an MAI [Member Appraisal Institute] designation.

23.    On April 29, 2019, Defendants performed the Appraisal for the Lender pursuant to the Lender's appraisal contract request form ("Contract") dated April 4, 2019, requiring, inter alia: *[e]ach and every appraisal must contain certifications and U.S.P.A.P language indicating compliance* [Emphasis Not Added] and attached as an *Addenda* to the Appraisal at pp. WESTROCK APPRAISAL SERVICES CORP. 102 - WESTROCK APPRAISAL SERVICES CORP. 104 ("Offer").

24.    Defendants presented an invoice for payment for the Appraisal dated April 29, 2019, for $4,500.00 ("Invoice").

25.    The Invoice was paid.

## ABM Lending

26.    The central claim in this Complaint arises out of an ABM secured Loan funded by an ABM Lender and secured by real property – the Property.

27.    ABM lenders like Sharestates are in the business of making ABM loans. All ABM loans are secured by real property, the loan underwriting of which is primarily based on the valuation of real property intended to secure the loan. This value is identified in appraisals – like the Appraisal. The risks that the Appraisal is intended to protect against do not include the possibility of the Borrowers' default on loans. Rather, the Appraisal is intended to ensure that if there is a default, then the Loan will be secured adequately. Thus, the ABM lender relies on the Appraisers to protect Lender's Loan and ability to apply proper underwriting by valuing Loan collateral in an industry compliant manner; the industry complaint manner requirement contractual provision is documented in the Contract, at WESTROCK APPRAISAL SERVICES CORP. 104, which states: *[e]ach and every appraisal must contain*

*certifications and U.S.P.A.P language Indicating compliance.*   [Emphasis Not Added]

28.    In underwriting the ABM Loan, the Lender required an accurate appraisal to determine, inter alia, the "L" in the loan-to-value ratio ("LTV").

29.    Using a conservative LTV of up to 55% allowed the Lender to create a buffer of equity in the Property securing each Loan of at least 45% to protect Lender's investment because, if the Borrower fails to make any payments against the Loan, Lender could foreclose on the Property and recover the full amount of Loan plus the costs of foreclosure.

30.    It was the obligation of the Defendants, professional, New Jersey licensed appraisers, to conduct accurate appraisals in full conformity with the Uniform Standards of Professional Appraisal Practice ("USPAP"), as noted in the Contract retention agreement *and* in the Appraisal four (4) separate times.

### THE TRANSACTION

31.    The Borrower, pursuant to an electronic loan application, requested and applied to Sharestates for an ABM refinance loan - Loan - in the amount of $3,987,000.00.

32.    The Loan was to be secured by the Property.

33.    The Loan was secured by the Property.

34.    Sharestates underwrote the Loan.

35.    Part of Sharestates's underwriting process included obtaining a valuation of the Property.

36.    Sharestates vendor management employee Nandram Ramnauth retained the Appraisers to obtain an appraisal of the Property; Sharestates expected appraisal management vendors to do present an appraisal that followed appraisal industry standards – USPAP.

37.    The Appraisers, performed the Appraisal, valuing the Property *As-Is – $7,250,000.*

38.    Sharestates, relying on the valuation of the Property in the Appraisal, as determined by the Appraisers in the Appraisal, approved the Loan for $3,987,000.00, which is less than the maximum allowed LTV of 55% ("Appraisal Reliance"). This underwriting was, inter alia, documented by that disclosure sheet dated May 10, 2019 ("Disclosure Sheet").

39.    On or about May 13, 2019, Sharestates funded the ABM Loan and documented the Loan with a Promissory Note, dated May 13, 2019 ("Note"), and secured the Loan with a Mortgage, Assignment of Leases and Rents and Security Agreement, dated May 13, 2019 ("Mortgage") on the Property.

### The Appraisal

40.    USPAP Definitions require all real estate appraisers to be non-corporate entities (individuals): *"**APPRAISAL PRACTICE**: valuation services performed by*

*an individual acting as an appraiser, including but not limited to appraisal and appraisal review.* [Emphasis in original.] *Comment: 'Appraisal practice' is provided only by appraisers, while valuation services are provided by a variety of professionals and others.*"

41. The USPAP Ethics Rules also require individual appraisers to comply with USPAP. *"An appraiser must comply with USPAP when obligated by law or regulation, or by agreement with the client or intended users. In addition to these requirements,* **an individual** *should comply any time* **that individual** *represents that he or she is performing the service as an appraiser. Comment: This Rule specifies the personal obligations and responsibilities of the* **individual appraiser.** *An* **individual appraiser** *employed by a group or organization that conducts itself in a manner that does not conform to USPAP should take steps that are appropriate under the circumstances to ensure compliance with USPAP.* So does *STANDARDS RULE 4-3, CERTIFICATION (c)(ii). The* **signing appraiser** *must have no reason to doubt that the work of those individuals is credible." Comment: Although* **a certification must contain the names of individuals providing significant appraisal or appraisal review assistance,** *it is not required that a summary of the extent of their assistance be located in a certification. This disclosure may be in any part(s) of the report.* [Emphasis Added]

42.    Defendants entered into the Contract to appraise the Property for Sharestates. The only Defendant who is a duly certified USPAP-defined appraiser, Romer, personally prepared and presented the Appraisal for the benefit of Sharestates.

43.    The Lender relied on the Appraisal in making its underwriting decision to approve, enter into, finalize and fund the Loan.

44.    The Appraisal identified its intended use as follows: *[t]he intended use of this appraisal report is to provide information to the client and intended user, Sharestates, for loan underwriting/mortgage financing purposes exclusively.*

45.    The Borrower defaulted on the Loan.

46.    The Lender accelerated the balance due under the Loan and demanded that the Borrower pay all outstanding funds, but the Borrower refused to do so.

47.    The Lender filed a foreclosure action ultimately resulting in a sale of the Property to a third party, Evan Almeida, on November 1. 2024, for $1,200,000.00, netting the Plaintiff $900,715.27.

48.    Counsel for the Lender retained an expert and undertook a Retrospective Commercial Technical Review ("Review Appraisal") to value the Property as of the Appraisal date and to determine whether the Appraisal complied with USPAP. The Review Appraisal was delivered to the Plaintiff on or about May 30, 2023. The result of the Appraisal Review was jarring. The Appraisal valued the Property *As-Is – $7,250,000.* The Appraisal Review identified for the first time to the Plaintiff

that the Appraisal should have appraised the Property *As-Is* at $2,900,000.00. The value differential is $4,470,000 (-60%) less than the Appraisal *As-Is* value.

49.    With an *As-Is* value of $2,900,000.00, the Lender would and could not have approved a loan for $3,987,000.00, which would have been an LTV of approximately 137.48%.

50.    The foreclosure sale netted significantly less than projected because of the inflated value provided in the Appraisal, resulting in a large deficiency under the Note and Loan documentation.

51.    The Review Appraisal, *inter alia*, revealed the improper, negligent and careless result of Defendants' affirmative acts and efforts resulting in the flawed Appraisal, upon which the Lender relied, each of which breached the contract requiring a USPAP complying appraisal (collectively, "Breaches of Contract"). Some, but not all, specific USPAP violations, each of which constitutes a material breach of the Contract, include:

i) **Sales Comparison Approach**
The appraisal excluded a land sales comparison approach, which would provide critical support for the conclusion of the "as is" market value of the subject property based upon its highest and best use as a redevelopment site. The appraiser relies upon the land residual methodology, which was reportedly at the direction of the client, however, the request of a land residual valuation does not preclude the appraiser from providing a supporting land sales comparison approach to value to allow for credible assignment results. As a result, the "as is" market value conclusion has been determined to be not credible. The lack of a sales comparison approach for the As-Is valuation of the property, and the incorrectly reported sales price and analysis of sale #3 reflects non-compliance with

the 2018-2019 edition of USPAP, SR 1-1(a), SR 1-1(b), SR 1-4(a), SR 2-1(b).

ii) **Subject/Comp Sales History**
According to the Subject Property Sales History section, "As of the date of valuation, the subject was owned by New Broad Realty, LLC (Lot 4); Broad Prospect, LLC (Lots 5 & 9). The subject property was purchased from New Broad Realty LLC by the current owner on 11/6/2018 for $7,050,000. **No other transactions involving the subject property have transpired within the past three years.** Based on the subject's As Is value the subject's last conveyance is well supported. To the appraiser's knowledge, the subject property is not currently for sale, or under contract for sale or option to purchase." [Emphasis Added]

But while the total sales price of $7,050,000 is accurate, however, there were multiple transfers of the subject property on the same day (11/6/2018), including a transfer for $1,800,000, between New Broad Realty LLC (Grantor) and 1213-1221 Broad LLC (Grantee) which should have been reported and analyzed in the appraisal report, according to USPAP guidelines.  This missing or incomplete analysis reflects non-compliance with the 2018-2019 edition of USPAP, SR 1-5(a) and (b), and SR 2-1(b).

iii) **Cost Approach**
The cost approach was not used. The appraiser states that "Given that the objective of this assignment is to form an opinion of the "as is", [sic] "as completed", and "as stabilized" market value(s) of the property, both the Sales Comparison and Income Approaches will be given consideration in this analysis. Based on the nature of the subject property and scope of this assignment, the appraiser did not use the Cost Approach to value. This approach is not generally considered primarily meaningful in appraising a property of this type and age." However, the appraiser provided a prospective "as complete" market value opinion of the subject property as a proposed new construction development. Therefore, the Cost Approach is a relevant technique that should have been employed in the appraisal report to support the prospective "as complete" valuation. Furthermore, the Cost Approach would have included estimate of the subject's underlying land value, which was a critical component missing from the appraisal for the "as is" valuation.  This missing or incomplete analysis reflects non-

13

compliance with the 2018-2019 edition of USPAP, SR 1-1(a), 1-1(b), 1-4(b)(i), SR 2-1(b).

**iv) Income Approach**

All calculations were accurate, apart from the calculation of the lease-up deduction. The appraiser estimated a lease-up expense for the 18 months at $46,450 per month, which should be $836,100. However, the figure used for this adjustment was $794,295. Further explanation and or revision is needed for this lease-up deduction. Additionally, the appraiser neglected to consider the time value of money concept (i.e., the present value of future cash flows), and failed to provide supporting evidence of the construction timeline and permitting history of the subject property. Therefore, the income approach was determined to be not credible. This missing or incomplete analysis reflects non-compliance with the 2018-2019 edition of USPAP, SR 1-1(a), and SR 2-1(b), SR 2-2(viii).

**v) Site/Highest & Best Use**

The appraiser states neither demolition nor modification of the existing improvements impact the subject's net return, yet then states it is his opinion the improvements should be demolished, and the site redeveloped with a 60-unit apartment building. These comments are contradictory and preclude the client/intended user from understanding the report properly. This missing or incomplete analysis reflects non-compliance with 2019-2019 Edition of USPAP 1-1(a); 1-3(b); SR 2-1(b); SR 2-2(a)(x),

collectively, "Appraiser Errors."

52.     The Appraisal inflated the value of the Property, because of a series of USPAP violations in the Appraiser Errors.

53.     The debt owed by the Borrower to the Plaintiff ("Damages") as of December 13, 2024, is calculated as follows:

| | |
|---|---|
| Unpaid Principal Balance | $ 3,987,000.00 |
| Unpaid Interest at 23.99% (1-27-20 - 11-1-24) | $ 4,574,825.70 |
| Default Fee | $ 1,354,450.52 |
| Total | $ 9,916,276.22 |
| Net Foreclosure Sales Proceeds (11-1-24) | ($    900,715.27) |

| Total Amount Due as of 11-1-24 | $ 9,015,560.95 |
| Per Diem after 11-2-24 – 12-13-24 | $    107,735.70 |
| Demand | $9,123,296.65 |

## COUNT I
### (BREACH OF CONTRACT)

54.    Plaintiff repeats, reiterates, realleges and incorporates by reference the allegations contained in paragraphs 1-53 of this Complaint.

55.    A valid contract existed:

A. Offer:  The parties entered into a contract containing certain terms – that the Defendants would appraise the Property in a USPAP compliant manner - Sharestates made the Offer as documented in the Contract;

B. Acceptance:  Defendants accepted the Offer by performing and presenting the Appraisal;

C. Consideration:  The Plaintiff did what the contract required of them by ensuring that the Invoice was paid;

D. Breach:  The Defendants breached the contract by, inter alia, performing the Appraisal Errors;

E. Loss Causation:  The Appraisal Errors caused the Plaintiff to make the Loan, which it would not have done if the Appraisal had been USPAP complying and properly valued the Property *and* upon liquidating the Property, the Plaintiff suffered the Damages because the Property was worth less than appraised in the Appraisal - put simply - had the Property

been worth the amount opined in the Appraisal, then the Plaintiff would not have suffered a loss.

56.    Sharestates is duly identified in the Appraisal as the Lender/Client, cover page as addressee and cover letter as addressee and Defendants prepared the Appraisal under the Appraisal Contract with the understanding and expectation that the Appraisal was for : *[t]he intended use of this appraisal report is to provide information to the client and intended user, Sharestates, for loan underwriting/mortgage financing purposes exclusively.*

57.    The Contract required Defendants to prepare the Appraisal in a USPAP compliant manner.

58.    The Contract required Defendants to prepare an appraisal that accurately valued the Property.

59.    Defendants breached the Contract by failing to adequately and properly perform their work; failing to prepare the Appraisal in compliance with USPAP; grossly overvaluing the Property, and, breaching the standard of care for appraisal contracts owed to Plaintiff per USPAP.

60.    Defendants further breached the Contract, *inter alia*, by committing the Appraisal Errors.

61.    Sharestates is entitled to expectation damages in order to recover the benefit of its bargain.   The Appraisal Errors caused Damages to the Lender because the

Lender was not secured adequately insofar as the Property value was significantly less – that is, is $4,470,000 (-60%) less than the Appraised As-Is value relied upon by the Lender when underwriting, approving, and funding the Loan.

62.     The Lender would not have made the Loan had the Breaches of Contract not have been made as the LTV Requirement would not have been met.   Thus, Defendants' acts and/or omissions in breaching the Appraisal Contract induced Plaintiff to act to its detriment causing the Damages.

63.     As a direct result of Defendants' breach of the Appraisal Contract, Plaintiff has been damaged.

WHEREFORE, the Plaintiff seeks judgment against the Defendants, jointly and severally, on Count I in the amount of $9,123,296.65 as of December 13, 2024 calculated as follows:

A.     $ 9,916,276.22, the debt owed by the Borrower to the Plaintiff, less the REO sales price;

B.     Prejudgment interest, from November 2, 2024, to Trial at the rate of 23.99% (at $2,627.70 per diem);

C.     Post-judgment interest;

D.     Court costs, service of process fees; and

E.     such other and further relief as justice in this case may require.

## COUNT II
### (APPRAISER MALPRACTICE)

64.    Plaintiff repeats, reiterates, realleges and incorporates by reference the allegations contained in paragraphs 1-63 of this Complaint.

65.    Romer *personally* performed each of the Appraisals in his individual capacity as a duly licensed appraiser in New York and as an agent of WestRock.

66.    WestRock performed each of the Appraisals and its name appears above the signature block, on the letterhead of each Appraisal, and the Romer signature in in the capacity of president of WestRock.

67.    Appraisers, in their professional capacity, owed the Plaintiff a duty to conform to a certain standard of conduct and prepare each Appraisal using that degree of care and skill which a reasonably competent appraiser acting in similar circumstances would use in preparing an appraisal; this duty included, but was not limited to, complying with USPAP.

68.    The WestRock was an appraiser with special training and experience.  As a professional, who under New Jersey law, must adhere to a standard of conduct commensurate with such attributes, the Appraisers owed the Plaintiff a duty to prepare the Appraisal using that degree of care and skill which is reasonable under the circumstances – that which a reasonably competent appraiser acting in similar circumstances would use in preparing an appraisal of the Property.

69.    Defendants knew that the express purpose of the Appraisal was for Plaintiff to use said Appraisal in determining whether or not to make a loan secured by the Property in order to ensure that the mortgagee would be secured adequately in the event of a default.

70.    Appraisers, by and through the Appraisal, violated the uniform standard of conduct required - that is, reasonable care under the circumstances, USPAP in the case of an appraiser - in reaching a value conclusion for the Property that was inappropriate, unreliable, and grossly overstated.

71.    When the Defendants issued their negligent Appraisal, it was foreseeable that the Properties would be overvalued, causing any loans secured thereby to be under-secured, and that in case of a default, the Plaintiff would suffer loss stemming from that loan.

72.    The Lender reasonably relied on the Appraisal to determine the value of the Properties.

73.    The Defendants deviated from the applicable standards of appraisal practice, inter alia, as seen by the Appraisal Errors.

74.    The Plaintiff suffered the Damages as a result of the appraiser's negligence because the Lender was not secured adequately insofar as the Property value was significantly less – that is, is $4,470,000 (-60%) less than the Appraised As-Is value relied upon by the Lender when underwriting, approving, and funding the Loan.

75.    The Damages were proximately caused by the Appraisers' failure to use that degree of care and skill that a reasonably competent appraiser would have used in preparing an appraisal of the Property because after default, the Lender was not secured adequately as the Property's value was significantly less than as relied upon.

76.    The Lender would not have made the Loan had the Breaches of Contract not have been made as the LTV Requirement would not have been met.    Thus, Defendants' acts and/or omissions in breaching the Appraisal Contract induced Plaintiff to act to its detriment causing the Damages.

77.    Professional, licensed expert appraiser, Steven Albert, executed that Affidavit of Merit stating, inter alia, that there is a reasonable probability that the appraiser's work fell outside acceptable professional standards; attached hereto, identified as **Plaintiff Exhibit 1**, and incorporated herein by this reference.

WHEREFORE, the Plaintiff seeks judgment against the Defendants, jointly and severally, on Count II in the amount of $9,123,296.65 as of December 13, 2024 calculated as follows:

A.    $ 9,916,276.22, the debt owed by the Borrower to the Plaintiff, less the REO sales price;

B.    Prejudgment interest, from November 2, 2024, to Trial at the rate of 23.99% (at $2,627.70 per diem);

Post-judgment interest;

C.    Court costs, service of process fees; and

D.    such other and further relief as justice in this case may require.


Dated:  March 3, 2025

/s/ Douglas J. Ferguson
Douglas J. Ferguson, Esq.
Janet L. Gold, Esq.
Eisenberg, Gold & Agrawal, P.C.
1040 North Kings Highway
Suite 200
Cherry Hill, NJ 08034
jgold@egalawfirm.com
dferguson@egalawfirm.com
(856)330-6200
(856)330-6207 (f)
Attorneys for Plaintiff, Sharestates
Investments, LLC


/s/ William M. Rudow
William M. Rudow, Esquire
Pro Hac Vice Admission Pending
Piel Law Firm, LLC
Attorneys for Plaintiff, Sharestates
Investments, LLC
502 Washington Avenue, Suite 730
Baltimore, Maryland 21204-4525
wrudow@piellawfirm.com
410-542-6000

21

## <u>CERTIFICATION PURSUANT TO L. Civ. R. 11.2</u>

I hereby certify that the matter in controversy is not the subject of any other action pending in any other court or of any pending arbitration or administrative proceeding.

Dated:  March 3, 2025

*/s/ Douglas J. Ferguson*
Douglas J. Ferguson, Esq.
Janet L. Gold, Esq.


*/s/ William M. Rudow*
William M. Rudow, Esquire
Pro Hac Vice Admission Pending

# EXHIBIT "1"

**Eisenberg, Gold & Agrawal, P.C.**
Janet L. Gold, Esq.
Douglas J. Ferguson, Esq.
1040 North Kings Highway, Suite 200
Cherry Hill, NJ 08034
jgold@egalawfirm.com
dferguson@egalawfirm.com
(856) 330-6200
Attorneys for Plaintiff, Sharestates Investments, LLC

-and-

**Piel Law Firm, LLC**
William M. Rudow, Esquire
502 Washington Avenue, Suite 730
Baltimore, Maryland 21204-4525
wrudow@piellawfirm.com
(410) 542-6000
Pro Hac Vice Admission Pending
Attorneys for Plaintiff, Sharestates Investments, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SHARESTATES INVESTMENTS, LLC** | |
| Plaintiff | **AFFIDAVIT OF MERIT** |
| v. | Civil Action No. |
| **WESTROCK APPRAISAL SERVICES, INC. and STEVEN R. ROMER, MAI** | |
| Defendants. | |

Steven S. Albert, MAI, SRA, being duly sworn upon this oath states:

1.     I am a licensed commercial real estate appraiser and consultant, and have been so since 1986.

2.     I am the President, previously Executive Vice President of Allstate Appraisal, a real estate appraisal firm in Chicago Heights, Illinois, 1993 to present.

3.     I am a graduate of Southern Illinois University in Carbondale, Illinois, where I obtained my Bachelor of Science degree in Business Management.

4.     My professional time is spent conducting, amongst other things, commercial appraisal reviews, and real estate and market analyses for various clients.

5.     My work, training, and experience relates to the appraisal specialty that concerns Plaintiff Sharestates Investments, LLC's ("Claimant") appraiser malpractice claim against Defendants Steven R. Romer, MAI ("Romer") and Westrock Appraisal Services, Inc. ("Westrock") (collectively "Defendants").

6.     I do not have any financial interest in the outcome of the above-captioned matter.

7.     Based on my review of various documents concerning the above-captioned matter, including but not limited to, the complaint in the above-captioned matter, the April 29, 2019 appraisal prepared by Romer and Westrock (the "Appraisal"), and the applicable Uniform Standards of Professional Appraisal Practice, it is my professional opinion, to a reasonable degree of professional

certainty, that the care, skill and knowledge exercised and exhibited in the practice or work that is the subject of the Appraisal, fell outside the acceptable professional, occupational and/or industry standards or practices of a commercial real estate appraiser as to Defendants Romer and Westrock.

8.     Accordingly, I believe that the Claimant has a meritorious claim.

9.     Attached hereto as **Exhibit "A"** is a true and accurate copy of my May 30, 2023 Retrospective Commercial Technical Review of the Appraisal.

10.     Attached hereto as **Exhibit "B"** is a true and accurate copy of my curriculum vitae.

Steven S. Albert, MAI, SRA

Sworn to before me this 29th day of January , 2025

Notary Public

LORA PINNICK
Official Seal
Notary Public - State of Illinois
My Commission Expires Feb 2, 2027

# EXHIBIT "A"



AllstateAppraisal
National Valuation and Review Services

## Retrospective Commercial Technical Review

### Section 1.0 - Introduction

| | | |
|---|---|---|
| 1.1 | Subject Property Address | 1213-1221 Broad Street & 124 Miller Street, Newark, New Jersey 07108 |
| 1.2 | Prepared By | Matthew J. Guzowski, MAI/Steven S. Albert, MAI, SRA |
| 1.3 | Appraiser License Number | Matthew J. Guzowski – NJ 42RG00146100/Steven S. Albert - IL153.000219 |
| 1.4 | Prepared For | William Rudow, Law Office of Hunter C. Piel, LLC |
| 1.5 | Intended User | William Rudow, Law Office of Hunter C. Piel, LLC and Allstate Appraisal, L.P. |
| 1.6 | Intended Use | Possible litigation support |
| 1.7 | Date of Report | 5/30/2023 |

### Section 2.0 - Original Appraisal Report

| | | |
|---|---|---|
| 2.1 | Property Type | As-Is: Redevelopment Site<br>As-Complete: 60-Unit Apartment Building |
| 2.2 | Prepared By | Steven R. Romer, MAI of Westrock Appraisal |
| 2.3 | Prepared For | Mr. Nandram Ramnauth<br>Portfolio Manager<br>Sharestates, Inc.<br>11 Middle Neck Road<br>Suite 400A<br>Great Neck, N.Y. 11021 |
| 2.4 | Effective Date of Value | As Is – April 16, 2019<br>As Completed – April 16, 2020 (there is a typographical error on Page 10 and throughout the report, which indicates the As Completed valuation date is 4/16/2019).<br><br>As Stabilized – October 16, 2020 |
| 2.5 | Date of Signature/Report | 4/29/2019 |
| 2.6 | Opinion of Value | As-Is – $7,250,000<br>As-Completed – $16,050,000<br>As-Stabilized – $16,850,000 |

### Section 3.0 - Review Summary

| | | |
|---|---|---|
| 3.1 | Value Difference | The appraisal report does not include a land sales comparison approach to support the "as is" market value conclusion derived via the land residual methodology.  The lack of a land sales comparison approach, among numerous other issues detailed herein, results in the As-Is valuation in the appraisal report being not credible.  As discussed in the conclusion section of this appraisal review report, we have estimated that the "as is" market value of the subject property, as of April 16, 2019, was $2,900,000, which is $4,470,000 (-60%) less than the appraised "as is" value in the report under review. |
| 3.2 | Report Purpose | Regarding the original appraisal prepared for Sharestates, the purpose of this report is to communicate an opinion as to the appropriateness of the analyses, credibility of the assignment results, appropriateness of report including the manner in which it was communicated and compliance with the applicable edition of the Uniform Standards of Professional Appraisal Practice (USPAP).  If the report is not credible, the reviewer will form an opinion of value. |



| 3.3 Scope of Work | The scope of work for this assignment is to perform a USPAP-Compliant Standards 3 and 4 review of the original appraisal prepared for Sharestates.<br><br>For the review of the original appraisal, the reviewer has, based on research and verification of appropriate data, formed an opinion as to the credibility of the report. This includes opinions regarding the comparable sales selected by the appraiser, the adjustments used by the appraiser, and any other items within the original appraisal the reviewer determines are relevant.  If the report is not credible, the reviewer will form an opinion of value.<br><br>James Beeler personally viewed the subject property, but not the comparable sales in the appraisal report. The reviewer has verified data in the original appraisal. As is typical appraisal practice, the reviewer has included additional disclosures regarding the scope of work performed, and any extraordinary assumptions made throughout the body of this report. The entire report should be reviewed in order to have a complete understanding of the scope of work. |
| --- | --- |
| 3.4 Extraordinary Assumptions | Unless the review indicates the data is inaccurate, the reviewer made the extraordinary assumption that the factual data reported in the original appraisal is correct and verified. Where the report presents contradictory information, the effects of the inconsistencies are considered in regard to the purpose of this report. If any factual data reported and assumed to be accurate in the original appraisal is found to be false, the reviewer's opinions and conclusions may be affected. |
| 3.5 Hypothetical Conditions | There are no hypothetical conditions. |

**Section 4.0 - Review of the Original Appraisal Report**

**4.1 Are the analyses, opinions and conclusions in the Subject section credible?**

**Conclusion: Yes**

**Comments:** The Letter of Transmittal indicates the subject property consists of vacant land and two former commercial buildings which are pending to be razed and re-developed into a 50,566 SF five-story and basement, elevator apartment building with 60 apartments. The building superintendent will reside offsite. Total building area above grade is projected to be approximately 50,566 square feet and the site has a total area of 16,000± square feet (0.37± acre). The property is zoned MX-1/R-3 (Mixed-use 1 Residential & Commercial/Residential 3 Family).

**4.2 Are the analyses, opinions and conclusions in the Contract section credible?**

**Conclusion: N/A**

**Comments:**

**4.3 Are the analyses, opinions and conclusions in the Neighborhood section credible?**

**Conclusion: Yes**

**Comments:** The report includes a Description of Subject's General Area which was thorough and included a variety of neighborhood characteristics (i.e. crime, transportation, trends, etc.)

**4.4 Are the analyses, opinions and conclusions in the Site/Highest & Best Use section credible?**

**Conclusion: No**

**Comments:** The appraiser's analysis of the Highest and Best Use of the subject site As (presently) Improved lacks credibility.  The appraiser states,

*"It is the appraiser's opinion that neither demolition nor substantial modification of the existing improvement would result in a higher net value return than is currently being achieved. The subject property is a legal conforming, non-complying use based on current zoning requirements. It is clear that the existing improvements add value to the land. The highest and best use as improved is thus to demolish the existing improvements and redevelop the site with a 60 unit apartment building.*



The appraiser states neither demolition nor modification of the existing improvements impact the subject's net return, yet then states it is his opinion the improvements should be demolished, and the site redeveloped with a 60-unit apartment building. These comments are contradictory and preclude the client/intended user from understanding the report properly.

This missing or incomplete analysis reflects non-compliance with 2019-2019 Edition of USPAP 1-1(a); 1-3(b); SR 2-1(b); SR 2-2(a)(x).

**4.5   Are the analyses, opinions and conclusions in the Improvements section credible?**

**Conclusion:** Yes

**Comments:**  The report includes a thorough description of the proposed improvements including foundation, exterior walls, roof, windows and all interior characteristics.  The report also includes a floor plan of the proposed improvements.

**4.6   Are the analyses, opinions and conclusions in the Sales Comparison Approach section credible?**

**Conclusion: No**

**Comments:** The appraisal excluded a land sales comparison approach, which would provide critical support for the conclusion of the **"as is"** market value of the subject property based upon its highest and best use as a redevelopment site. The appraiser relies upon the land residual methodology, which was reportedly at the direction of the client, however, the request of a land residual valuation does not preclude the appraiser from providing a supporting land sales comparison approach to value to allow for credible assignment results. As a result, the "as is" market value conclusion has been determined to be not credible.

It is noted that the appraisal does include an improved sales comparison approach to value the proposed subject property improvements, in their prospective "as complete" condition.  The appraiser presents a set of comparable sales of improved apartment buildings to estimate the value of the subject property in its prospective "as complete" condition.  There were some deficiencies observed in this approach, most notably the inclusion and analysis of Sale #3.

According to the appraisal report, Sale #3, which includes two (2) tax lots, was reported to have transferred for and indicated sale price of $10,400,000.  However, upon review of the deed for this transfer, the sales price was in fact $5,200,000, which his half of the reported sale price per the appraisal report.  Therefore, the indicated sale price for Sale #3 was $100,000 per unit, or $111.94 per square foot of GBA, not $200,000 per unit, or $224.00 per square foot of GBA.  Furthermore, Sale #3 is improved with a dated apartment building which has accrued significant depreciation and is not comparable to the proposed subject property new construction development in its "as complete" condition.

Sales #1, #2, #4 and #5 were accurately analyzed and provided satisfactory indicators of market value of the subject property in its prospective "as complete" condition.

The adjustment chart was accurately calculated.  The indicated value of the subject property, as-complete was reported at $265,000 per unit, which approximated the mean of the adjusted sales and was considered reasonable herein.

The lack of a sales comparison approach for the As-Is valuation of the property, and the incorrectly reported sales price and analysis of sale #3 reflects non-compliance with the 2018-2019 edition of USPAP, SR 1-1(a), SR 1-1(b), SR 1-4(a), SR 2-1(b).



**AllstateAppraisal**
National Valuation and Review Services

---

**4.7    Are the analyses, opinions and conclusions in the Subject/Comp Sales History section credible?**

**Conclusion: No**

**Comments:** According to the Subject Property Sales History section, "As of the date of valuation, the subject was owned by New Broad Realty, LLC (Lot 4); Broad Prospect, LLC (Lots 5 & 9). The subject property was purchased from New Broad Realty LLC by the current owner on 11/6/2018 for $7,050,000. No other transactions involving the subject property have transpired within the past three years. Based on the subject's As Is value the subject's last conveyance is well supported. To the appraiser's knowledge, the subject property is not currently for sale, or under contract for sale or option to purchase."

*The total sales price of $7,050,000 is accurate, however, there were multiple transfers of the subject property on the same day (11/6/2018), including a transfer for $1,800,000, between New Broad Realty LLC (Grantor) and 1213-1221 Broad LLC (Grantee) which should have been reported and analyzed in the appraisal report, according to USPAP guidelines.  Therefore, the subject's sales history is not credible.  It is noted that the subject's property is currently listed for sale (59 days on market as of May 5, 2023) for $3,000,000, or $50,000 per developable unit.  Please see the subject's sales history, based upon our research, as follows:*

| Sale 1 | Grantor | Grantee | Sale Date | Sale Price | Doc # |
|---|---|---|---|---|---|
| Lots 4 & 5 | New Broad Realty LLC | 1213-1221 Broad LLC | 11/7/2018 | $  900,000 | 102264 |
| Lot 9 | New Broad Realty LLC | 1213-1221 Broad LLC | 11/7/2018 | $  900,000 | 98524 |
| | | | **Total Sales Price** | **$ 1,800,000** | |

| Sale 2 | Grantor | Grantee | Sale Date | Sale Price | Doc # |
|---|---|---|---|---|---|
| Lots 4 & 5 | 1213-1221 Broad LLC | Broad Prospect LLC | 11/6/2018 | $ 3,525,000 | 19132 |
| Lot 9 | 1213-1221 Broad LLC | Broad Prospect LLC | 11/7/2018 | $ 3,525,000 | 10798 |
| | | | **Total Sales Price** | **$ 7,050,000** | |

Additionally, as previously discussed, comparable Sale #3 was inaccurately analyzed.

This missing or incomplete analysis reflects non-compliance with the 2018-2019 edition of USPAP, SR 1-5(a) and (b), and SR 2-1(b).

**4.8    Are the analyses, opinions and conclusions in the Reconciliation section credible?**

**Conclusion: No**

**Comments:** For the reasons cited herein, the As-Is value conclusion in the appraisal report was deemed to be non-credible.



**4.9   Are the analyses, opinions and conclusions in the Cost Approach section credible?**

**Conclusion: No.** This section was not employed.

**Comments:** The cost approach was not used. The appraiser states that "Given that the objective of this assignment is to form an opinion of the "as is", "as completed", and "as stabilized" market value(s) of the property, both the Sales Comparison and Income Approaches will be given consideration in this analysis. Based on the nature of the subject property and scope of this assignment, the appraiser did not use the Cost Approach to value. This approach is not generally considered primarily meaningful in appraising a property of this type and age." However, the appraiser provided a prospective "as complete" market value opinion of the subject property as a proposed new construction development.  Therefore, the Cost Approach is a relevant technique that should have been employed in the appraisal report to support the prospective "as complete" valuation. Furthermore, the Cost Approach would have included estimate of the subject's underlying land value, which, as previously discussed was a critical component missing from the appraisal for the "as is" valuation.

Furthermore, the appraiser relies upon the construction costs provided by the property owner which were deducted from the prospective "as complete" value, to derive an "as is" valuation (i.e., the land residual methodology).  However, the appraiser neglected to include support to prove the reasonableness of the relied upon construction costs (i.e., third party sources such as cost estimating services guidebooks or construction cost comparables).  Therefore, the cost approach was determined to be not credible.

This missing or incomplete analysis reflects non-compliance with the 2018-2019 edition of USPAP, SR 1-1(a), 1-1(b), 1-4(b)(i), SR 2-1(b).

**4.10   Are the analyses, opinions and conclusions in the Income Approach section credible?**

**Conclusion: No**

**Comments:** The appraiser projected market rental rates for the proposed subject property rent roll using market apartment comparables in the local area market.  The comparables are relevant and projected rental rates were reasonable.  The appraiser also projected a parking income for the 42 spaces.  The appraiser projected a market vacancy rate to conclude to an effective gross income (EGI).  Thereafter, the appraiser projected operating expenses, using comparables in the market and the subject property owner provided projection.  A market derived capitalization rate was used to capitalize the projected NOI to a market value of the subject property, as stabilized.  From this value, lease-up costs were deducted and then the estimated construction costs were deducted to conclude to an as is market value of the subject property.

All calculations were accurate, apart from the calculation of the lease-up deduction.  The appraiser estimated a lease-up expense for the 18 months at $46,450 per month, which should be $836,100. However, the figure used for this adjustment was $794,295.  Further explanation and or revision is needed for this lease-up deduction. Additionally, the appraiser neglected to consider the time value of money concept (i.e., the present value of future cash flows), and failed to provide supporting evidence of the construction timeline and permitting history of the subject property.  Therefore, the income approach was determined to be not credible.

This missing or incomplete analysis reflects non-compliance with the 2018-2019 edition of USPAP, SR 1-1(a), and SR 2-1(b), SR 2-2(viii).

**4.11   Are the analyses, opinions, and conclusions in the Project Information for PUDs section credible?**

**Conclusion: N/A**

**Comments:**

**4.12   Are the exhibits credible?**

**Conclusion: Yes**

**Comments:** No comments.

**AllstateAppraisal**
National Valuation and Review Services

| 4.13 | Is the opinion of value adequately supported by the analysis, opinions and conclusions? |
|---|---|

**Conclusion: No**

**Comments:** For the reasons cited herein, the As-Is value conclusion in the report was deemed to be not credible.

| 4.14 | Is the report appropriate and communicated in a manner that is not misleading? |
|---|---|

**Conclusion: No**

**Comments:** The report is communicated in a manner that is misleading. The appraiser describes within the report that "The prospective "As Completed and As Stabilized" values within this report are based on the extraordinary assumption that 1) the proposed construction of the subject improvement will be completed as of the anticipated date of completion and will conform to the plans and construction budget submitted to us by ownership; 2) ownership will obtain all requisite work permits and complete the required construction in a workmanlike manner within 12 months of the date of inspection and will obtain a Permanent Certificate of Occupancy within a reasonable time horizon; and 3) subsequent to the completed construction, the subject property will be in good condition. The prospective as-completed and as-stabilized dates of valuation are April 16, 2020 and October 16, 2020."

It should be noted that on Page 10 and throughout the report, the valuation date of the "as completed" subject property states a date of April 16, 2019, which contradicts the paragraph above.

Furthermore, the appraiser performed the land residual methodology on a straight-line basis, without considering the present value of money (i.e., discounting) during the construction period, or discussing approvals for development, if any, or the anticipated construction timeline. The appraiser failed to provide supporting evidence of the construction timeline and permitting history of the subject property and failed to support the "as is" market value conclusion derived via the land residual method with comparable land sales in the market. Therefore, the value conclusions in the report were deemed to be not credible.

This missing or incomplete analysis reflects non-compliance with the previously addressed SRs from the 2018-2019 edition of USPAP.



---

### 4.15  Final Comments

The appraisal report is deemed not credible based upon the preceding comments.  The lack of a land sales comparison approach results in a report which cannot be relied upon credibly for the As-Is valuation.   The indicated "as is" market value relied solely upon the land residual methodology was $7,250,000, or $120,833 per developable unit, based upon the reported 60-unit development plan.  It is noted that we have performed a separate appraisal review in conjunction with this appraisal review report, for the same client and the same appraisal firm.  Within the other appraisal report, one of the reported "building sales" relied upon was determined to be a land development sale, which was confirmed based upon our review of property records.  The property is located at 162-170 S Orange Ave, Newark, NJ, and was recently developed with a new construction apartment building containing 24 units (the prior, existing improvements on site at the time of the last sale were razed for the proposed development).  This comparable property transacted for $999,000, or $41,625 per developable unit excluding demolition costs, or $48,917 per unit when factoring in estimated demolition costs of $175,000.  This is significantly less than the indicated "as is" market value conclusion derived in the appraisal report of $120,833 per unit ($7,250,000 / 60 developable units).  Furthermore, our independent research of other recent comparable Newark land development site comparable sales indicates a similar range of value per development unit generally falling in the range of $45,000 and $55,000 per unit.  In addition to the lack of support for the "as is" market value, the appraiser makes numerous assumptions in the report without providing supporting evidence such as building permit history, construction cost estimates and construction timeline.  Furthermore, the lack of a Cost Approach valuation for the prospective "as complete" valuation of a new construction apartment building makes the results of that valuation scenario also not credible.  As such, the appraisal report is not credible.  Based upon the comparable sale located at 162-170 S. Orange Avenue, as well as other comparable market transactions we have researched, we have estimated a market value of $50,000 per unit, or $3,000,000 "as vacant" for the subject property.  We have estimated demolition costs of $100,000 for the existing subject improvements, therefore, the estimated "as is" market value of the subject property, as of the effective date of valuation, April 16, 2019, is $2,900,000 ($3,000,000 - $100,000).  Furthermore, in order to reconcile this market value estimate of the subject property development site, we have added two (2) additional comparable development site sales within the City of Newark, which transacted at $52,778 per unit and $52,024 per unit.  The descriptions for these comparable transactions can be found within the Addenda of this report.



---

| **Section 5.0 - Assumptions and Limiting Conditions** |
|---|

BY THIS NOTICE, ALL PERSONS AND FIRMS REVIEWING, UTILIZING OR RELYING UPON THIS REPORT IN ANY MANNER, BIND THEMSELVES TO ACCEPT THESE ASSUMPTIONS AND LIMITING CONDITIONS.

Do not use this report if you do not so accept. These conditions are a part of the review appraisal report; they are a preface to any value conclusion, certification, definition, fact or analysis.

1. The data in the work under review is assumed to be true and correct. Unless noted otherwise, the reviewer has not attempted to obtain additional information or data. The reviewer's opinions and conclusions, unless otherwise noted, are based exclusively and entirely on the analysis, opinions and conclusions contained in the work under review.

2. The reviewer assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the reviewer render any opinion as to the title, which is assumed to be good and marketable.

3. The reviewer assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The reviewer assumes no responsibility for such conditions, or for engineering which might be required to discover such factors.

4. Information, estimates, and opinions furnished to the reviewer, and contained in the review report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items can be assumed by the reviewer.

5. Disclosure of the contents of the report is governed by the Uniform Standards of Professional Appraisal Practice and the Bylaws and Regulations of the professional appraisal organizations with which the reviewer is affiliated.

6. Neither all, nor any part of the content of the review report, or copy thereof (including the conclusions of the review, the identity of the reviewer, professional designations, reference to any professional appraisal organizations, or the firm with which the reviewer is connected), shall be used for any purposes by anyone but the client specified in the review report.

7. No change of any item in the review report shall be made by anyone other than the reviewer and the reviewer shall have no responsibility for any such unauthorized change.

8. Unless otherwise noted, the reviewer's opinion of value is based on the same type and definition of value stated in the work under review.

**AllstateAppraisal**
National Valuation and Review Services

| Section 6.0 - Certification |
|---|

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, unbiased professional analyses, opinions, and conclusions.
- We have no present or prospective interest in the property that is the subject of the work under review and no personal interest with respect to the parties involved.
- We have no bias with respect to the property that is the subject of the work under review or to the parties involved with this assignment.
- Our engagement in this assignment was not contingent upon developing or reporting predetermined results.
- Our compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in this review or from its use.
- Our compensation for completing this assignment is not contingent upon the development or reporting of predetermined assignment results or assignment results that favor the cause of the client, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal review.
- Our analyses, opinions, and conclusions were developed, and this review was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation and the Code of Ethics of the Appraisal Institute.
- Matthew J. Guzowski, Steven S. Albert, Matthew F. Boylan and Zachary Hendrickson have not inspected the subject or the comparable sales. James Beeler conducted an exterior inspection of the subject on April 27, 2023.
- Matthew F. Boylan provided significant research assistance to me.
- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.
- As of the date of this report, Matthew J. Guzowski and Matthew F. Boylan have complied with the requirements of the continuing education program for Designated Members of the Appraisal Institute.
- We have performed no prior services with regard to the subject in the past three years.

**Respectfully Submitted,**

Matthew J. Guzowski, MAI, MRICS
President
Goodman-Marks Associates, Inc.
Certified General Real Estate Appraiser
New York State Certificate #468986
New Jersey Certificate #42RG00146100

Matthew F. Boylan, MAI
Executive Vice President
Goodman-Marks Associates, Inc.
Certified General Real Estate Appraiser
New York Certificate #4651008

Steven S. Albert, MAI, SRA
President
Allstate Appraisal, L.P.
Certified General Real Estate Appraiser
Illinois State Certificate # IL 553.000219

Zachary Hendrickson
Vice President
Goodman-Marks Associates, Inc.
Certified General Real Estate Appraiser
New York Certificate #4652000



**PHOTOGRAPHS OF THE SUBJECT PROPERTY**



View of Subject Property from Miller Street



View of Subject Property from Miller Street

**AllstateAppraisal**
National Valuation and Review Services

## PHOTOGRAPHS OF THE SUBJECT PROPERTY



**View of Subject Property from Miller Street**



**View of Subject Property from Miller Street**


AllstateAppraisal
National Valuation and Review Services

## PHOTOGRAPHS OF THE SUBJECT PROPERTY



**View of Subject Property from Miller Street**



**View of Subject Property from Miller Street**

**Allstate**Appraisal
*National Valuation and Review Services*

## PHOTOGRAPHS OF THE SUBJECT PROPERTY



**View of Subject Property from Miller Street**



**View of Subject Property from Broad Street**

**Allstate**Appraisal
National Valuation and Review Services

## PHOTOGRAPHS OF THE SUBJECT PROPERTY



**View of Subject Property**



**View of Subject Property from Broad Street**

**Allstate**Appraisal
National Valuation and Review Services

## PHOTOGRAPHS OF THE SUBJECT PROPERTY



**Street Scene facing East on Miller Street**



**Street Scene facing West on Miller Street**

**Allstate**Appraisal
National Valuation and Review Services

## PHOTOGRAPHS OF THE SUBJECT PROPERTY



**Street Scene facing North on Broad Street**



**Street Scene facing South on Broad Street**

AllstateAppraisal
National Valuation and Review Services

### Comparable Development Site Sales

| Location | APN | Sale Date | Sale Price | Land Area (Sq. Ft.) | Proposed Units | Sale Price / Unit |
|----------|-----|-----------|-----------|---------------------|----------------|-------------------|
| 115 Chestnut Street Newark, NJ | 14-00920-0000-00021 | 8/7/2019 | $3,800,000 | 28,989 | 72 | $52,778 |
| 162-170 S Orange Avenue Newark, NJ | 14-00240-0000-00001 14-00240-0000-00004 14-00240-0000-00069 | 12/19/2018 | $1,174,000* | 3,485 | 24 | $48,917 |
| 71-87 Clay Street Newark, NJ | 14-00008-0000-00009-03 | 4/30/2018 | $4,370,000* | 43,560 | 84 | $52,024 |
| | | | | | Min | $48,917 |
| | | | | | Max | $52,778 |
| | | | | | Mean | $51,239 |

*Including estimated demolition costs

**Allstate**Appraisal
National Valuation and Review Services

| *Land Sale* | **115 Chestnut Street** |
|---|---|
| *District 99, Block 920, Lot 21* | **Newark, New Jersey** |



*Aerial Image as of 9/2019*

| Grantor | Chestnut Global Enterprises |
|---|---|
| Grantee | Ironbound Living Chestnut |
| Date of Sale (Recorded) | 8/7/2019 (8/29/2019) |
| Document Number | 2019083254 |
| Description | Irregular shaped, block front parcel with frontage on the west side of Hermon Street, south of Chestnut Street and north of Vesey Street. According to the marketing brochure, the site was fully approved for a 4 story, market apartment building for 72 units (56) two bedrooms and (16) one bedrooms. The proposed building will contain 86,400 square feet. The site was vacant as of the transaction date. The site is currently under construction with estimated delivery date of July 2023 according to CoStar. |
| Land Area | 28,989± square feet |
| Zoning | MX-1 – Mixed-Use Residential and Commercial |
| Indicated Sale Price | $3,800,000.00 |
| Sale Price / Unit | $52,778 |

**AllstateAppraisal**
National Valuation and Review Services

## TAX MAP



**Architectural Rendering**




**Allstate**Appraisal
National Valuation and Review Services

| Land Sale | 162-170 S Orange Avenue |
|---|---|
| District 99, Block 240, Lots 1, 4, 69 | Newark, New Jersey |



*Photograph as of transaction date*

| Grantor | 162-170 S Orange Av LLC |
|---|---|
| Grantee | SMS Capital I LLC |
| Date of Sale (Recorded) | 12/19/2018 (12/27/2018) |
| Document Number | 2018111258 |
| Description | Three, irregular shaped parcels of land located on the southeast corner of S Orange Avenue and Newton Street in Newark. The site was constructed with a 7,000 sq. ft. building as of the transaction date. According to the seller this building has been empty for approximately ten years and there is no value in the building as its roof has collapsed. Prior to the sale this site was approved for a 24 unit multi-family building with underground parking. No retail space will be included in the project. According to media reports construction will start at the end of summer or early fall and take approximately 14 months to complete. |
| Land Area | 10,019± square feet |
| Zoning | R-4 – Multifamily Low Rise |
| Indicated Sale Price | $ 999,000 |
| Plus: Est Demo Costs | $ 175,000 |
| Adj. Sale Price | $1,174,000 |
| Sale Price / Unit | $48,917 |



**TAX MAP**



**Google Street View as of June 2022**





| Land Sale | 71-87 Clay Street |
|---|---|
| District 99, Block 8, Lot 9.3 | Newark, New Jersey |



*Aerial Image as of 5/2018*

| Grantor | Clay Assocs LLC |
|---|---|
| Grantee | Spring Street Commons Urban Renewal |
| Date of Sale (Recorded) | 3/28/2018 (4/19/2018) |
| Document Number | 33513 |
| Description | Irregular shaped parcel of land located on the southeast corner of Clay Street and Spring Street. The property was reportedly sold with approvals for an 84-unit multifamily development. The site was improved with commercial buildings containing approximately 14,800 square feet of GBA as of the transaction date. We have estimated a demolition cost at $25 per square foot of GBA which was added to the indicated sale price. After the transaction, the buildings were demolished to make way for the new development, Spring Street Commons. |
| Land Area | 43,865± square feet |
| Zoning | RDV Redevelopment Zone – Newark Riverfront |
| Indicated Sale Price | $4,000,000 |
| Plus: Est Demo Costs | $   370,000 |
| Adj. Sale Price | $4,370,000 |
| Sale Price / Unit | $52,024 |

**AllstateAppraisal**
National Valuation and Review Services

**TAX MAP**



**Architectural Rendering**



AllstateAppraisal
National Valuation and Review Services

# Steven S. Albert, MAI, SRA

## Education

- Bachelor of Science Degree Business Management, Southern Illinois University; Carbondale, Illinois
- Successfully completed courses from the Appraisal Institute and other Course Providers:
  Fundamentals of Relocation Appraising | Residential Consulting | Advanced Applications | Discounted Cash Flow Analysis | Appraisers Legal Liabilities | Real Estate Appraisal Principals | Basic Valuation Procedures | Standards of Professional Practice Capitalization Theory and Techniques (A & B) | Case Studies in Real Estate Valuation | Valuation Analysis and Report Writing Residential Valuation | Appraisal Reporting of Complex Residential Properties | Fair Housing Issues and Cultural Awareness Feasibility Analysis and Highest and Best Use – Non-Residential | Valuation of Detrimental Conditions in Real Estate Condemnation | Real Estate Risk Analysis | Appraisal Reporting for Fair Lending | Reviewing Residential Appl. and Using Fannie Mae Form 2000 | FHA and the Appraisal Process | 7 Hour National USPAP Equivalent Course | Appraisal of Nursing Facilities | Eminent Domain and Condemnation | 2 Hour Michigan Law Seminar  Business Practices and Ethics | Appraising Convenience Stores | Supervising Appraisal Trainees | Real Estate Appraisal Operations | Analyzing Distressed Real Estate | Appraising Manufactured Housing | Understanding the New Interagency Appraisal and Evaluation Guidelines

## Teaching Credentials and Related Experience

- Staff Instructor, Joliet Junior College, 1986 – 1990, *Valuation Principals and Procedures, Income Property Appraising and Capitalization Techniques*
- Approved Associate Instructor, Appraisal Institute, 1990 – 1995

## Committees, Councils and Groups

- Real Estate Advisory Committee Member, Joliet Junior College, 1987 – 1992
- Grievance Committee Chair of the Ethics Administration Division, Appraisal Institute, 2005
- MAI Experience Review Committee, Appraisal Institute 2000 – 2001
- Public Relations Committee, Appraisal Institute, 2006 – 2007
- Industry Advisory Council (IAC) – The Appraisal Foundation, Current
- Collateral Risk Network (CRN), Current
- Illinois Collation of Appraisal Professionals (ICAP), Current
- Approved Investigative Reviewer for the Appraisal Departments for the States of Tennessee, Nevada and Utah

## Recent Expert Witness Testimony

- 231 Scott LLC, et al. v. Lakeside Bank, et al., Case No. 11L006136, Consolidated with Case No. 09 CH17899 (Cook Cty. Cir. Ct.)
- !RMO: Weinberger, Case No. 13D2106, Circuit Court, 18th Judicial Circuit, DuPage County, IL
- Felton A. Spears, Jr., et al v. First American eAppraiseIT, Case No. 5:08-CV-00868-RMW (N.D. Cal.)
- Gaudie v. Countrywide Home Loans, Inc. et al., Case No. 1:2009 cv 02450 (N.D. Ill.) | FDIC v. Cromer, et al., Case No. 2:2010 cv 04249 (E.D.N.Y.)
- Llano Financing Group, LLC v. Perry H. Brown, Jr., et al., Case No. 15L008719 (Cook Cty. Cir. Ct.)
- RFC & ResCap Liquidating Trust Litigation, Omnibus Deposition, Case # 13-cv-03451, 12/12/2017
- Residential Funding Company, LLC vs. Home Loan Center, Inc. Deposition, Case # 14-CV-1716, 12/14/17)
- Residential Funding Company, LLC vs. Standard Pacific Mortgage, Inc. Deposition, Case # 13-CV-03526, 1/15/18
- Residential Funding Co., LLC and ResCap Liquidating Trust vs. Colonial Savings F.A. Deposition, Case # 13-CV-03474, 1/16/18
- RFC & ResCap Liquidating Trust Litigation, Global Sample Deposition, Case # 13-CV-03451, 1/25/18
- Residential Funding Co., LLC vs. Decision One Mortgage Co., LLC & HSBC Finance Corp. Deposition, Case #14-CV-1737, 2/9/18
- Residential Funding Company, LLC vs. BMO Harris Bank, N.A., D/B/A M&I Bank FSB Deposition, Case # 13-CV-03523, 2/16/18
- IRMO: Ross, Case No. 2014 D 005209, Circuit court of Cook County, Illinois
- IRMO: Conroy, Case No. 2017 D 5639, Circuit Court of Cook County, Illinois
- IRMO: Grant, Case No. 16 D 2323, Circuit Court of Cook County, Illinois
- IRMO: Salviola, Case No. 17 D 008494, Circuit Court of Cook County, Illinois
- IRMO: Sanez, Case No. 18 D 430135 Circuit Court of Cook County, Illinois
- IRMO: Bess, Case No. 18 D 1496, Circuit Court of Lake County, Illinois



AllstateAppraisal
National Valuation and Review Services

- IRMO: Lindell, Case No. 18D 00001224, Circuit Court of Lake County, Illinois
- IRMO: Pleda, Case No. 2017 D 6204, Circuit Court of Cook County, Illinois
- IRMO: Polk, Case No. 2015 D 10934 Circuit Court of Cook County, Illinois
- IRMO: Ritacca Case No. 21 D 1711 Circuit Court for the Nineteenth Judicial Circuit, Lake County, IL
- Sharestates Investments, LLC v. Republic Valuations NY, LLC;  Case #; 510899/2021; Supreme Court, Kings County, New York, Commercial Division

## Professional Affiliations and Memberships

- MAI, SRA, Appraisal Institute. Certified under the Mandatory Program of Continuing Education

- Federal Housing Authority Certified Appraiser

## Professional Experience

- President, previously Executive Vice President; Allstate Appraisal – 1993 to present
- Investment grade property staff appraiser; Roe Westberry & Associates, Palm Beach, Florida – 1992
- Staff appraiser, then chief review appraiser; Allstate Appraisal – 1986 to 1991
- Qualified as an Expert Witness in state and federal courts in Illinois and New York state courts in numerous cases involving divorce, condemnation, partition suits, damage claim resolution, RMBS cases, and various other litigation issues.

- Assessing Appraisals and Other Appraisal Vendors for Investment Banking Firms:  Review services for investment banking assessments of pools of mortgages available for purchase, in excess of 7,000 since 2008.

- Assessing Appraisals for Mortgage Insurance Companies:  Mortgage insurance claim investigations, in excess of 50,000 since 2003

- Assessing Appraisals for Fannie Mae:  Appraisal reviews for the repurchase demand investigations by Fannie Mae, in excess of 25,000 reviews nationally since 1992

- Assessing Appraisals for Lenders:  Pre- and post-funding appraisal review services for lenders throughout the country, in excess of 250,000 appraisal reviews for lenders since 1991

- Managing the Appraisal and Appraisal Review process for the Federal Deposit Insurance Corporation (FDIC): Appraisals in connection with FDIC's management and sale of real estate assets of failed banks held in receivership, in excess of 12,000 appraisals since 2008

## Licensure

| State | License Number | Expiration Date |
|---|---|---|
| State of **Illinois**<br>Certified General Appraiser | #553.000219 | 09/30/2023 |
| State of **Michigan**<br>Certified General Appraiser | #1201073664 | 07/31/2024 |
| State of **Indiana**<br>Certified General Appraiser | #CG49400228 | 06/30/2024 |
| State of **Tennessee**<br>Certified General Appraiser | #5626 | 03/10/2025 |

AllstateAppraisal
*National Valuation and Review Services*

| | | |
|---|---|---|
| State of **Wisconsin**<br><br>Certified General Appraiser | #2384-10 | 12/14/2023 |
| State of **Minnesota**<br><br>Certified General Appraiser | #40519550 | 8/31/2024 |
| State of **Utah**<br><br>Certified General Appraiser | #11513357-CG00 | 10/31/2023 |
| State of **Arizona**<br><br>Certified General Appraiser | #CGA-1004255 | 9/30/2023 |
| State of **Georgia**<br><br>Certified General Appraiser | #378754 | 05/31/2024 |
| State of **Maine**<br><br>Certified General Appraiser | #CG4251 | 12/31/2023 |
| State of **Nevada**<br><br>Certified General Appraiser | #A.0208071-CG | 12/31/2023 |
| State of **Virginia**<br><br>Certified General Appraiser | 4001018311 | 06/30/2024 |


**AllstateAppraisal**
National Valuation and Review Services

### MATTHEW J. GUZOWSKI, MAI, MRICS, PRESIDENT
### GOODMAN-MARKS ASSOCIATES, INC.

**GENERAL EXPERIENCE**

Over 37 years as a commercial real estate appraiser and consultant

Testified as an expert witness –     New York State Supreme Court, New York County
New York State Supreme Court, Queens County
New York State Supreme Court, Kings County
New York State Supreme Court, Nassau County
New York State Supreme Court, Suffolk County
U. S. District Court, Eastern District of New York
U. S. Bankruptcy Court, Kings County
Civil Court of the City of New York, Kings County
District Court, Landlord & Tenant Court, Suffolk County
Zoning and Arbitration Testimony, Nassau County

**EMPLOYMENT**

4/91 to Date:     *Goodman-Marks Associates, Inc.*

President preparing narrative appraisal reports of income-producing and other properties to determine market valuations. These reports are used for mortgage purposes, settlement of estates, real estate tax certiorari actions and condemnation cases.

1/83 to 4/91:     *New York City Economic Development Corporation*
161 William Street
New York, New York
Vice President of appraisal services preparing narrative appraisal reports and reviewing fee appraisals to determine the market value of real estate for disposition, development and lease.

**EDUCATION**
**College:**     St. John's University
Degree: MBA – Finance
December, 1989
Queens College, C.U.N.Y.
Degree: BA – English
January, 1981

**Professional:**     Appraisal Institute
Courses successfully completed:
1A1 - Real Estate Appraisal Principles
1A2 - Basic Valuation Procedures
SPP - Standards of Professional Practice
1BA - Capitalization Theory & Techniques - Part A
1BB - Capitalization Theory & Techniques - Part B
2-1 Case Studies in Real Estate Valuation
2-2 Report Writing and Valuation Analysis
Seminars attended:
Arbitration in Real Estate
Real Estate Financial Statement Analysis



### MATTHEW J. GUZOWSKI, MAI, MRICS, PRESIDENT
### GOODMAN-MARKS ASSOCIATES, INC. (continued)

**PROFESSIONAL MEMBERSHIP**

Appraisal Institute - MAI Designation #10114
Long Island, New York Chapter
Chairman – Admissions Committee, Long Island Chapter, 2000-2006
Chairman – Budget & Finance Committee, Long Island Chapter, 2007
Treasurer – Long Island Chapter, 2007
Secretary – Long Island Chapter, 2008
Vice President – Long Island Chapter, 2009
Senior Vice President – Long Island Chapter, 2010
President – Long Island Chapter, 2011
The Royal Institution of Chartered Surveyors I.D. #6404964
REBNY – Membership I.D. #49202
Community Bankers Mortgage Forum
International Right of Way Association I.D.#7902612

**GUEST LECTURER**

New York University – Real Estate Institute

**LICENSES**

Certified General Real Estate Appraiser
State of New York Certificate #468986
State of New Jersey Certificate #42RG00146100
State of Connecticut Certificate #RCG0001210
New York State Salesperson License #10401205644

# EXHIBIT "B"


**AllstateAppraisal**
National Valuation and Review Services

# Steven S. Albert, MAI, SRA

## Education

- Bachelor of Science Degree Business Management, Southern Illinois University; Carbondale, Illinois
- Successfully completed courses from the Appraisal Institute and other Course Providers:

Fundamentals of Relocation Appraising | Residential Consulting | Advanced Applications | Discounted Cash Flow Analysis | Appraisers Legal Liabilities | Real Estate Appraisal Principals | Basic Valuation Procedures | Standards of Professional Practice Capitalization Theory and Techniques (A & B) | Case Studies in Real Estate Valuation | Valuation Analysis and Report Writing Residential Valuation | Appraisal Reporting of Complex Residential Properties | Fair Housing Issues and Cultural Awareness Feasibility Analysis and Highest and Best Use – Non-Residential | Valuation of Detrimental Conditions in Real Estate Condemnation | Real Estate Risk Analysis | Appraisal Reporting for Fair Lending | Reviewing Residential Appl. and Using Fannie Mae Form 2000 | FHA and the Appraisal Process | 7 Hour National USPAP Equivalent Course | Appraisal of Nursing Facilities | Eminent Domain and Condemnation | 2 Hour Michigan Law Seminar  Business Practices and Ethics | Appraising Convenience Stores | Supervising Appraisal Trainees | Real Estate Appraisal Operations | Analyzing Distressed Real Estate | Appraising Manufactured Housing | Understanding the New Interagency Appraisal and Evaluation Guidelines

## Teaching Credentials and Related Experience

- Staff Instructor, Joliet Junior College, 1986 – 1990, *Valuation Principals and Procedures, Income Property Appraising and Capitalization Techniques*
- Approved Associate Instructor, Appraisal Institute, 1990 – 1995

## Committees, Councils and Groups

- Real Estate Advisory Committee Member, Joliet Junior College, 1987 – 1992
- Grievance Committee Chair of the Ethics Administration Division, Appraisal Institute, 2005
- MAI Experience Review Committee, Appraisal Institute 2000 – 2001
- Public Relations Committee, Appraisal Institute, 2006 – 2007
- Industry Advisory Council (IAC) – The Appraisal Foundation, Current
- Collateral Risk Network (CRN), Current
- Illinois Collation of Appraisal Professionals (ICAP), Current
- Approved Investigative Reviewer for the Appraisal Departments for the States of Tennessee, Nevada and Utah

## Recent Expert Witness Testimony

- 231 Scott LLC, et al. v. Lakeside Bank, et al., Case No. 11L006136, Consolidated with Case No. 09 CH17899 (Cook Cty. Cir. Ct.)
- IRMO: Weinberger, Case No. 13D2106, Circuit Court, 18th Judicial Circuit, DuPage County, IL
- Felton A. Spears, Jr., et al v. First American eAppraiseIT, Case No. 5:08-CV-00868-RMW (N.D. Cal.)
- Gaudie v. Countrywide Home Loans, Inc. et al., Case No. 1:2009 cv 02450 (N.D. Ill.) | FDIC v. Cromer, et al., Case No. 2:2010 cv 04249 (E.D.N.Y.)
- Llano Financing Group, LLC v. Perry H. Brown, Jr., et al., Case No. 15L008719 (Cook Cty. Cir. Ct.)
- RFC & ResCap Liquidating Trust Litigation, Omnibus Deposition, Case # 13-cv-03451, 12/12/2017
- Residential Funding Company, LLC vs. Home Loan Center, Inc. Deposition, Case # 14-CV-1716, 12/14/17)
- Residential Funding Company, LLC vs. Standard Pacific Mortgage, Inc. Deposition, Case # 13-CV-03526, 1/15/18
- Residential Funding Co., LLC and ResCap Liquidating Trust vs. Colonial Savings F.A. Deposition, Case # 13-CV-03474, 1/16/18
- RFC & ResCap Liquidating Trust Litigation, Global Sample Deposition, Case # 13-CV-03451, 1/25/18
- Residential Funding Co., LLC vs. Decision One Mortgage Co., LLC & HSBC Finance Corp. Deposition, Case #14-CV-1737, 2/9/18
- Residential Funding Company, LLC vs. BMO Harris Bank, N.A., D/B/A M&I Bank FSB Deposition, Case # 13-CV-03523, 2/16/18
- IRMO: Ross, Case No. 2014 D 005209, Circuit court of Cook County, Illinois
- IRMO: Conroy, Case No. 2017 D 5639, Circuit Court of Cook County, Illinois
- IRMO: Grant, Case No. 16 D 2323, Circuit Court of Cook County, Illinois
- IRMO: Salviola, Case No. 17 D 008494, Circuit Court of Cook County, Illinois
- IRMO: Sanez, Case No. 18 D 430135 Circuit Court of Cook County, Illinois
- IRMO: Bess, Case No. 18 D 1496, Circuit Court of Lake County, Illinois


**Allstate**Appraisal
National Valuation and Review Services

- IRMO: Lindell, Case No. 18D 00001224, Circuit Court of Lake County, Illinois
- IRMO: Pleda, Case No. 2017 D 6204, Circuit Court of Cook County, Illinois
- IRMO: Polk, Case No. 2015 D 10934 Circuit Court of Cook County, Illinois
- IRMO: Ritacca Case No. 21 D 1711 Circuit Court for the Nineteenth Judicial Circuit, Lake County, IL
- Sharestates Investments, LLC v. Republic Valuations NY, LLC; Case #; 510899/2021; Supreme Court, Kings County, New York, Commercial Division

## Professional Affiliations and Memberships

- MAI, SRA, Appraisal Institute. Certified under the Mandatory Program of Continuing Education
- Federal Housing Authority Certified Appraiser

## Professional Experience

- President, previously Executive Vice President; Allstate Appraisal – 1993 to present
- Investment grade property staff appraiser; Roe Westberry & Associates, Palm Beach, Florida – 1992
- Staff appraiser, then chief review appraiser; Allstate Appraisal – 1986 to 1991
- Qualified as an Expert Witness in state and federal courts in Illinois and New York state courts in numerous cases involving divorce, condemnation, partition suits, damage claim resolution, RMBS cases, and various other litigation issues.

- Assessing Appraisals and Other Appraisal Vendors for Investment Banking Firms: Review services for investment banking assessments of pools of mortgages available for purchase, in excess of 7,000 since 2008.

- Assessing Appraisals for Mortgage Insurance Companies: Mortgage insurance claim investigations, in excess of 50,000 since 2003

- Assessing Appraisals for Fannie Mae: Appraisal reviews for the repurchase demand investigations by Fannie Mae, in excess of 25,000 reviews nationally since 1992

- Assessing Appraisals for Lenders: Pre- and post-funding appraisal review services for lenders throughout the country, in excess of 250,000 appraisal reviews for lenders since 1991

- Managing the Appraisal and Appraisal Review process for the Federal Deposit Insurance Corporation (FDIC): Appraisals in connection with FDIC's management and sale of real estate assets of failed banks held in receivership, in excess of 12,000 appraisals since 2008

## Licensure

| State | License Number | Expiration Date |
|---|---|---|
| State of **Illinois** Certified General Appraiser | #553.000219 | 09/30/2023 |
| State of **Michigan** Certified General Appraiser | #1201073664 | 07/31/2024 |
| State of **Indiana** Certified General Appraiser | #CG49400228 | 06/30/2024 |
| State of **Tennessee** Certified General Appraiser | #5626 | 03/10/2025 |

**Allstate**Appraisal
National Valuation and Review Services

| | | |
|---|---|---|
| State of **Wisconsin** <br> Certified General Appraiser | #2384-10 | 12/14/2023 |
| State of **Minnesota** <br> Certified General Appraiser | #40519550 | 8/31/2024 |
| State of **Utah** <br> Certified General Appraiser | #11513357-CG00 | 10/31/2023 |
| State of **Arizona** <br> Certified General Appraiser | #CGA-1004255 | 9/30/2023 |
| State of **Georgia** <br> Certified General Appraiser | #378754 | 05/31/2024 |
| State of **Maine** <br> Certified General Appraiser | #CG4251 | 12/31/2023 |
| State of **Nevada** <br> Certified General Appraiser | #A.0208071-CG | 12/31/2023 |
| State of **Virginia** <br> Certified General Appraiser | 4001018311 | 06/30/2024 |